## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZHARI J. WALTON, | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 24-CV-6420** |
| | : | |
| MONTGOMERY COUNTY | : | |
| COMMUNITY COLLEGE, | : | |
| **Defendant.** | : | |

### MEMORANDUM

**MCHUGH, J.**                                              **DECEMBER 11, 2024**

Plaintiff Zhari J. Walton has filed a *pro se* Complaint against Defendant Montgomery County Community College (the "College") alleging violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"), and a state law breach of contract claim.  Mr. Walton also seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Walton *in forma pauperis* status and dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[1]

## I.      FACTUAL ALLEGATIONS[2]

Walton's allegations are brief.  He asserts that at some time before October 23, 2023, the College inaccurately reported a debt that is reflected on his credit report "despite previous

---

[1]  Walton also filed two Motions for Summary Judgment, neither of which state any factual allegations or arguments.  (ECF Nos. 4, 6).  Because the Complaint will be dismissed on screening, the Motions will be denied as moot.

[2]  Walton used a form complaint available to unrepresented litigants to file his claims. (ECF No. 1.)  He also filed several exhibits, including relevant correspondence to the College. (ECF No. 2.)  The Court considers the entirety of both submissions to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.  The factual allegations set forth in this Memorandum are taken from Complaint.  Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up.

attempts to dispute the validity of this debt and request proper validation." (Compl. at 4.) He alleges that he has not received a "satisfactory response" from the College "despite giving them one year to respond." (*Id*.) He contends this delay "puts them in default." (*Id*.)

Walton included letters and an "invoice" for damages that he sent to the College in his exhibits. (ECF No. 2.) He sent a letter to the College, dated October 20, 2024, titled, "Dispute of Unresolved Balance and Warning Against Unauthorized Third-Party Debt Collection – Final Notice." (*Id*. at 12.) His letter states that he has tried to reach out to the College about "an unresolved past due balance of $602.83" and has not received a response or validation of this debt to his satisfaction. (*Id*.) Walton goes on to reiterate his "concerns regarding the potential consequences of unauthorized third-party debt collections activities and the College's continued reporting of this collection" on his credit report. (*Id*.) He urges the College to respond with "the necessary information to verify the validity of this debt," otherwise, he has "no choice but to pursue legal action to protect my rights and seek appropriate remedies." (*Id*.) He also sent an invoice to the College titled, "Damages for Violations of the Fair Credit Reporting Act (FCRA)." (*Id*. at 13.) The damages are listed as follows: (i) $130,000 for denial of equity line credit; (ii) $140,000 for denial of a mortgage for an investment property; (iii) $125,000 for causing the breakup between him and his fiancé; (iv) $150,800 for causing him "to lose their job;" (v) $100,000 for making it difficult to provide for his family, and; (vi) $1.2 million dollars for punitive damages. (*Id*.) He added additional amounts due for sales taxes and penalty fees. (*Id*.) He attached an exhibit of a similar letter he sent to the College in September 2023. (*Id.* at 5-8.)

Walton claims the College violated the FCRA and the FDCPA and is in breach of contract. (Compl. at 4.) He seeks money damages in the amount of $5,481,026.40. (*Id*. at 5.)

## II.    STANDARD OF REVIEW

The Court grants Mr. Walton leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Walton is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Also, when allowing a plaintiff to proceed *in forma pauperis*, the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d

Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III.    DISCUSSION

### A.    FCRA Claims

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner" (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010))).  In the language of the FCRA, credit reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness."  *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).

Mr. Walton's claims against the College stems from allegedly providing inaccurate information about a debt that appears on his credit report.  (Compl. at 4.)  Under the FCRA, the College must, therefore, be deemed to be a "furnisher" of that information, rather than a "credit reporting agency" to which this type of information is furnished to create credit reports.  To state

a plausible claim under the FCRA against a furnisher of credit information, as opposed to the

credit reporting agency itself, a plaintiff must allege that he "filed a notice of dispute with a

consumer reporting agency; the consumer reporting agency notified the furnisher of information

of the dispute; and the furnisher of information failed to investigate and modify the inaccurate

information." *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693,

2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016), *aff'd sub nom., Harris v. Pennsylvania*

*Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87 (3d Cir. 2017) (*per curiam*);

*see also* 15 U.S.C. §§ 1681s-2(b); *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292, 302 (E.D.

Pa. 2021) ("[T]here must be some threshold showing of inaccuracy to make a claim against a

furnisher" pursuant to § 1681s-2).  If the furnisher fails to comply with its obligations under the

Act, "the aggrieved consumer can sue for noncompliance." *Hoffmann v. Wells Fargo Bank,*

*N.A.*, 242 F. Supp. 3d 372, 391 (E.D. Pa. 2017); *see also Eades v. Wetzel*, No. 19-3821, 2021

WL 287752, at *1 (3d Cir. Jan. 28, 2021) (*per curiam*) ("[U]nder the FCRA, '15 U.S.C. § 1681s-

2(b) is the only section that can be enforced by a private citizen seeking to recover damages

caused by a furnisher of information.'" (quoting *SimmsParris*, 652 F.3d at 358) (alteration

omitted)).

        In other words, to allege a plausible claim against a furnisher of credit information, the

plaintiff must identify the account at issue, allege that the furnisher communicated inaccurate

information to a credit reporting agency, what that information was, that he disputed the

information *with the credit reporting agency*, and that the furnisher of the information failed to

reasonably investigate the dispute after having been notified by the credit reporting agency.  *See*

*Pressley v. Capital One*, 415 F. Supp. 3d 509, 513 (E.D. Pa. 2019) (plaintiff failed to state a

FCRA claim when she "ha[d] not (1) identified the accounts at issue, (2) described the allegedly

false and misleading information that appears in the accounts, (3) stated that she filed a dispute regarding the false and misleading information; or (4) alleged that Capital One failed to investigate and modify the inaccurate information"). Here, Mr. Walton only claims that he disputed the allegedly incorrect information with the College, rather than with any of the credit reporting agencies. This is not sufficient to allege a plausible violation of the FCRA against a furnisher of credit information. *See Peeples v. Ulta Beauty Inc.*, No. 22-4661, 2023 WL 377889, at *2 (E.D. Pa. Jan. 23, 2023) ("Even liberally construing the Complaint, Peeples has not stated a claim against Ulta as a furnisher of information to a consumer reporting agency. Peeples alleges that she sent a dispute letter to Ulta sometime in 2021. . . . There are, however, no allegations that she disputed any inaccurate information with any of the consumer reporting agencies."). The lack of any allegation that Walton disputed the allegedly inaccurate information with a credit reporting agency that then notified the College of the dispute, and that the College then failed to investigate and modify the inaccurate information, makes his claim against the College not plausible. Mr. Walton will, however, be granted leave to amend on this claim to allege additional facts to cure this defect.

## B.    FDCPA Claims

The FDCPA "provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005). Congress enacted the FDCPA "'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019) (quoting 15 U.S.C. § 1692(e)). "The FDCPA pursues these stated

purposes by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Id.* (citing 15 U.S.C. §§ 1692b-1692j); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (*en banc*) ("The FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors.").

To state a claim under the FDCPA, a plaintiff must establish that (1) he "is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (internal citations omitted). Where a plaintiff fails to allege facts supporting each of these elements, the FDCPA claim is not plausible. *See Humphreys v. McCabe Weisberg & Conway, P.C.*, 686 F. App'x 95, 97 (3d Cir. 2017) (*per curiam*) (concluding that FDCPA claim was pled based on "conclusory and speculative statements that cannot survive a motion to dismiss").

Mr. Walton's FDCPA claim is not plausible because the College is not a debt collector under the terms of the statute. The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added). In contrast, a "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Id.* § 1692a(4). A "debt collector" does not

include "creditors who attempt to collect a debt in their own name." *Guyton v. PECO*, 2018 WL 10016428, at *1 (E.D. Pa. Aug. 24, 2018), *aff'd*, 770 F. App'x 623 (3d Cir. 2019) (*per curiam*) ("Plaintiff owed the relevant 'debt' (her utility bill) to PECO, as the creditor for services rendered to her.  PECO thus is not a debt collector under the FDCPA.")  It is clear from the Complaint and exhibits that the College is a creditor collecting a debt own directly to it and is therefore not conducting  business as a debt collector.  *See O'Brien v. Valley Forge Specialized Educ. Servs.*, No. 03-5695, 2004 WL 2580773, at *3 (E.D. Pa. Nov. 10, 2004) ("Plaintiff does not allege that the principal purpose of the Defendant, a private primary school, is the collecting of debts, or that the school regularly engages in collecting debts owed to another party.  Indeed, we wonder how any private school which collects its own tuition payments could fall within the scope of the FDCPA." (citing *Howard v. Albert Magnus College*, No. 04-784, 2004 WL 2009283, at *2 (D. Conn. Sept. 7, 2004) (dismissing FDCPA claim against private college because it did not qualify a "debt collector")); *see also Kneipp v. PECO*, No. 12-5929, 2013 WL 878888, at *2 (E.D. Pa. Mar. 8, 2013) (dismissing FDCPA claim against PECO recognizing it "is not in business as a collection agency" but "collects charges in its own name for services it provides").  Walton's own exhibits to the Complaint acknowledge that a third-party debt collector may be attempting to collect the debt for the College.  *See* ECF No. 2 at 5, 12 ("As a result, I must reiterate my concerns regarding the potential consequences of unauthorized third-party debt collections activities and the College's continued reporting of this collection on my credit report.").  Because the College is not a debt collector under the FDCPA, but instead a debt owner attempting to collect debts for itself, the FDCPA claim must be dismissed with prejudice. *See Henson v. Santander Consumer USA Inc*., 137 S. Ct. 1718, 1721 (2017) (the statutory

8

language defining a debt collector focuses "on third party collection agents working for a debt owner — not on a debt owner seeking to collect debts for itself.").

    **C.**     **Breach of Contract Claim**

    The Court understands Mr. Walton to further allege a state law breach of contract claim. Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

    Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Mr. Walton does not allege the citizenship of the parties.  Rather, he provides only Pennsylvania addresses for himself and the College, *see* Compl. at 2, 3, which suggests that he and the College may be Pennsylvania citizens.  Accordingly, Walton has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## III.    CONCLUSION

For the reasons stated above, the Court will grant Walton leave to proceed *in forma pauperis* and dismiss the Complaint.  All claims against the College pursuant to the FDCPA will be dismissed with prejudice.  The remaining claims made pursuant to the FCRA and breach of contract under state law will be dismissed without prejudice.  Walton's Motions for Summary Judgment will be denied as moot.  Walton will be provided an opportunity to file an Amended Complaint if he is capable of curing the defects the Court has identified in the claims dismissed without prejudice.

An Order providing additional instructions on amendment will be entered.

**BY THE COURT:**

**/s/ Gerald Austin McHugh**
_____

**GERALD A. MCHUGH, J.**